IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL HERIDIA | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. |
| | : | |
| BLACK DIAMOND VIDEO, INC., | : | |
| a California Corporation, | : | |
| | : | |
| EDWARD PRIEST, BRIAN PRIEST, and | : | COMPLAINT AND JURY DEMAND |
| JOSEPH PAPA | : | |
| each individually, and in their capacity as | : | |
| Directors and Officers of | : | |
| Black Diamond Video, Inc. | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff Michael Heridia, by and through his undersigned counsel, Alan L. Frank Law

Associates, P.C., hereby brings suit against Defendant Black Diamond Video, Inc., Edward

Priest, Brian Priest, and Joseph Papa, each individually and as in their capacity as Directors and

Officers of Black Diamond Video, Inc. and sets forth as follows:

### Parties, Jurisdiction and Venue

1.     Plaintiff Michael Heridia ("Heridia") is a resident of Pennsylvania, whose address

is 44 Fink Drive, Ottsville, Pa., 18942. Heridia is a shareholder of Black Diamond Video, Inc.,

as described more fully below.

2.     Defendant Black Diamond Video , Inc. ("Black Diamond"), is a corporation, duly

organized and existing under the laws of the state of California, which has its principal place of

business at 1000 Atlantic Avenue, #114, Alameda, CA  94501, and its registered business

1

address at 503 Canal Boulevard, Point Richmond, CA 94804.

3.      Defendant Edward Priest is the Founder, Chief Technology Officer, Chief Executive Officer, and Managing Director of Black Diamond. Defendant Edward Priest was involved in the sale and marketing of Black Diamond securities, and in fact, traveled to Pennsylvania on several occasions to solicit investments from Heridia and other Pennsylvania resident investors. It is believed and therefore averred that Defendant Edward Priest resides in Alameda County, California.

4.      Defendant Brian Priest, at all times material hereto, was a Director of Black Diamond, he held himself out to Heridia and the public generally as the President of Black Diamond, he signed corporate documents as the President of Black Diamond, he had authority to bind Black Diamond, and was involved in the sale and marketing of Black Diamond securities. Defendant Brian Priest resides in Pennsylvania.

5.      Defendant Joseph Papa, at all times material hereto, was the Chief Financial Officer of Black Diamond, with authority to bind Black Diamond, was involved in the sale and marketing of Black Diamond securities, and, in fact, traveled to Pennsylvania on several occasions to solicit investments from Heridia and other Pennsylvania resident investors. It is believed and therefore averred that Defendant Joseph Papa resides in Port Richmond County, California.

6.      Jurisdiction is proper pursuant to 28 U.S.C §1331, in that the case involves questions of Federal law, notably violations of the Securities Exchange Act of 1934. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over all other claims asserted in this action.

2

7.    Venue is proper in this District pursuant to 28 U.S.C. §1391, in that a substantial amount of the events or omissions giving rise to Plaintiff's claims occurred in this district, and Defendant Black Diamond is subject to personal jurisdiction in this District.

<u>**Facts**</u>

8.    Defendant Black Diamond was formed and incorporated  in or around 2004.

9.    Defendant Black Diamond supplies real-time video processing technology to the health and defense industries.

10.    Through the sales and marketing efforts of Defendants Edward Priest, Brian Priest and Joseph Papa ,and the written and oral representations made by Black Diamond, Heridia purchased Black Diamond stock through private offerings on seven (7) different occasions.

11.    More specifically, Heridia made his first purchase of 35,000 shares of Series A Preferred Black Diamond stock, at a purchase price of $1.50 per share, on December 6, 2007, pursuant to a Series A Preferred Stock Purchase Agreement dated December 7, 2007 (the "2007 Stock Purchase Agreement").  Upon payment by Heridia of Fifty Two Thousand Five Hundred Dollars ($52,500), Certificate Number P-16 was issued to Heridia to reflect his ownership of 35,000 shares of Series A Preferred Black Diamond stock.  A true and correct copy of the 2007 Stock Purchase Agreement is attached hereto and incorporated herein as Exhibit "A".

12.    The 2007 Stock Purchase Agreement specifically provides in relevant part as follows:

> **3.3    Authorization.  All corporate action on the part of the Company and its directors and shareholders necessary for the authorization, execution, delivery and performance of this Agreement and the [Shareholders'/Voting] Agreement (the**

3

"**Transaction Documents**") and the authorization, sale, issuance, and delivery of the shares and the performance of the Company's obligations under the Transaction Documents has been taken or will be taken prior to the Closing.

(a)     This Agreement, when executed and delivered by the Company, will constitute a valid and binding obligation of the Company enforceable in accordance with its terms, subject to (i) laws of general application relating to specific performance, injunctive relief or other equitable remedies, (ii) applicable bankruptcy, insolvency, reorganization or other laws of general application relating to or affecting the enforcement of creditors' rights generally and (iii) federal or state laws limiting enforceability of the indemnification provision in the Rights Agreement.

(b)     When issued, sold and delivered in accordance with the terms of this Agreement for the consideration provided for herein, the Shares shall be duly authorized, validly issued, fully paid and non-assessable and shall be free of any liens or encumbrances, other than restriction on transfer under the Transaction Documents and applicable state and federal securities laws. ...

See Exhibit "A" attached hereto.

13.     On September 5, 2009, Heridia made his second purchase of an additional 33,334 shares of Series A Preferred Black Diamond Stock, at a purchase price of $1.50 per share . Upon payment by Heridia of Fifty Thousand One Dollars ($50,001), Certificate Number P-78 was issued to Heridia to reflect his ownership of an additional 33,334 shares of Series A Preferred Black Diamond stock.

14.     On December 21, 2009, Heridia purchased 67,000 shares of Black Diamond Common Stock, at a price of Thirty Cents ($0.30) per share. Upon payment by Heridia of Twenty Thousand One Hundred Dollars ($20,100), Black Diamond issued Certificate Number C-54 to reflect Heridia's ownership of 67,000 shares of Black Diamond Common Stock.

15.     In or around January of 2010, Defendant Brian Priest approached Heridia about buying additional Black Diamond shares. At that time, Defendant Brian Priest and Mr. Henry

4

Thompson, a former officer and/or director of Black Diamond, represented to Heridia that Black Diamond needed a substantial and immediate capital infusion to make required payments on existing loans. To induce his immediate investment, and continue operations, Defendants offered Heridia Black Diamond Series A Preferred Shares at a discounted price of One Dollar ($1.00) per share.

16.     Based on Defendants' discounted offer, on January 20, 2010, Heridia purchased both Series A Preferred shares and Common shares of Black Diamond. Specifically, Heridia purchased Seventy Thousand (70,000) Series A Preferred shares, at the discounted offered price of One Dollar ($1.00) per share, and upon Heridia's payment of Seventy Thousand Dollars ($70,000), Black Diamond issued Certificate Number P-90 representing Heridia's ownership of Seventy Thousand (70,000) shares of Black Diamond Series A Preferred Stock. Also on January 20, 2010, Heridia purchased Forty Five Thousand (45,000) shares of Black Diamond Common Stock, at a price of Thirty Cents ($0.30) per share, and upon Heridia's payment therefor, Black Diamond issued Certificate Number C-57 reflecting Heridia's ownership of Forty Five Thousand (45,000) shares of Black Diamond Common Stock.

17.     On April 20, 2010, Defendants again offered Heridia Black Diamond Series A Preferred Stock at a rate of One Dollar ($1.00) per share. Based on said offer, Heridia purchased an additional One Hundred Fifty Thousand (150,000) shares of Black Diamond Series A Preferred stock for One Hundred Fifty Thousand Dollars ($150,000). A true and correct copy of a check from Michael Heridia payable to Black Diamond dated April 20, 2010 in the amount of One Hundred Fifty Thousand Dollars ($150,000), which was deposited by Black Diamond on April 21, 2010 is attached hereto and incorporated herein as Exhibit "B".

5

18.     Ten days later, on April 30, 2010, based upon the same offer of Defendants for Series A Preferred shares at the price of One Dollar ($1.00) per share, Heridia purchased an additional One Hundred Thousand (100,000) shares of Black Diamond Series A Preferred stock for One Hundred Thousand Dollars ($100,000).  A true and correct copy of a check from Michael Heridia payable to Black Diamond dated April 20, 2010 in the amount of One Hundred Thousand Dollars ($100,000), which was deposited by Black Diamond on April 30, 2010, is attached hereto and incorporated herein as Exhibit "C".

19.     Despite cashing Heridia's checks, and repeated written request by Heridia and repeated assurances from Black Diamond that they would be issued, no share certificates were issued for the April 20, 2010 and April 30, 2010 purchases by Heridia of Two Hundred Fifty Thousand (250,000) shares of Black Diamond Series A Preferred stock.  A true and correct copy of Black Diamond Preferred Stock Register supplied to Heridia which states next to "Michael Heridia" "May 2012 Agreement/ to be issued 250,000 Series A Preferred", is attached hereto and incorporated herein as Exhibit "D".  A true and correct copy of the proposed but unexecuted settlement agreement and general release provided to Heridia by Black Diamond executives, which specifically outlines Heridia's share purchases and share certificates issued and unissued, is attached hereto and incorporated herein as Exhibit "E".

20.     For each Heridia Black Diamond share purchase identified above, Heridia executed a Stock Purchase Agreement, similar in form, substance and terms as the 2007 Stock Purchase Agreement; however, copies of said Stock Purchase Agreements were never provided to Heridia.

6

21.     Unbeknownst to Heridia at the time he made his January 2010, and April 2010

Black Diamond share purchases, outlined above, Black Diamond was aware of corporate

irregularities, issuance of stock in violation of the Company's Amended and Restated Articles of

Incorporation, non-compliance with state and federal securities laws, director malfeasance,

mismanagement and diversion of corporate funds, including, but not limited to, forgery,

improper use of corporate funds for personal use, failure to deposit proceeds from shares

purchases into accounts controlled by Black Diamond, but did not disclose that material

information to Heridia.

22.     More specifically, unbeknownst to Heridia, in March of 2010, more than One (1)

month before Heridia's two (2) April 2010 share purchases and investment of Two Hundred Fifty

Thousand Dollars ($250,000), multiple emails were exchanged between the directors and officers

of Black Diamond wherein demand was made for Defendant Brian Priest's resignation from the

Board of Directors based upon claims against him of fraud, forgery, diversion of corporate funds,

failure to follow corporate formalities, missing stock purchase documentation, and failure to

remit proceeds of stock sales to the Company, all of which were affecting the financial position

of Black Diamond.

23.     By way of example, in a March 19, 2010, email from Defendant Edward Priest to

former officer/director Henry Thompson, and Defendant Joeseph Papa, and Fernando Velez, Jr.,

counsel to Black Diamond, with the subject line "Brian's resignation", Defendant Edward Priest

states, in relevant part:

7

**From: Edward Priest**
**To:**   henry1@vzw.blackberry.net; fvelez@rppmh.com;
          Joep@blackdiamondvideo.com;
**Date:**  Fri, March 19, 2010 8:33:35 AM
**Cc:**
**Subject: RE: Brian's resignation**
. . .

I don't believe my request that Brian remove himself is that difficult as you
describe.  Please explain how a person that forges State, Bank and corporate
documents has staying power?  Taking no action and inviting him to an advisory
meeting isn't working for me.  Fortunately I have rights here and will exercise them.
I will take your response as a no action response.

Regarding certificates, no one is putting thoughts into my head.  Brian has been
reluctant to release these documents by your own admission.  Brian has created a
new bank account under BDV's name without my knowledge.  Brian had a history
of collecting investment money and checks without depositing them.  Explain why
Brian created a new Bank account under BDV's name during the same time period
in December of 2008 when he forged state and corporate documents?

A true and correct copy of the March 19, 2010 email chain regarding demands for Defendant

Brian Priest's resignation are collectively attached hereto and incorporated herein as Exhibit "F".

24.      Also, there was a Board of Directors Meeting of Black Diamond held on April 18,

2010, which was two (2) days before Heridia's April 20, 2010 purchase of One Hundred Fifty

Thousand (150,000) Series A Preferred shares, and twelve (12) days before his April 30, 2010

purchase of another One Hundred Thousand (100,000) Series A Preferred shares, wherein the

Directors confirmed, among other things, that there were incomplete state and federal securities

filings, that there were securities law compliance issues, that Black Diamond was already in

default of its loan with Univest Bank, that it had no documentation regarding an alleged loan by

Defendant Director Brian Priest, and that the Company had sold more shares of Series A

Preferred stock than was authorized under its Articles of Incorporation. The Directors also

discussed alleged forgery and fraud by Defendant Director Brian Priest. The April 18, 2010

Minutes of Meeting of Board of Directors of Black Diamond Video Black Diamond, Inc.

provide, in relevant part, as follows:

> **Participating in the meeting in person were the following persons constituting all of the Directors of the Corporation.**
>
> **Edward Priest**
> **Brian Priest**
> **Henry Thompson**
>
> **The following people also attended the meeting at the request of the Board:**
>
> **Joe Papa          Chief Financial Officer**
> **Fernando Velez, Jr.**
> **Brian Suh**
> **. . .**
>
> **Discussion of the Equity Issuances**
> **. . .**
>
> **Mr. Velez then noted that the Corporation's securities filings were the SEC and state securities regulators needed to be completed.**
>
> **The Board discussed various methods to resolve the inconsistencies and other issues related to the documentation of the securities offering and compliance with the state and federal securities laws. Among the alternatives discussed was a possible "rescission offer" under California law. Mr. Velez noted that a California Department of Corporation's permit to conduct a rescission offer would be the preferred method of cleaning up and resolving securities law compliance issues. However, because this method required offering all for the stockholders a refund of their investment, plus interest, this option was tabled until the Corporation's financial status improved.**
>
> **A stopgap measure of circulating amended and restated documentation was discussed.**
>
> **Mr. Velez also noted that the Corporation had sold more shares of Series A Preferred Stock then was authorized under the Corporations Amended and Restated Articles of Incorporation.**

Mr. Papa noted that there were according to their most recent records 2,587,104 shares of Series A Preferred Stock issues and outstanding, and promissory notes convertible into approximately 1,000,000 shares of Series A Preferred Stock. Mr. Velez noted that the Corporation's Articles of Incorporation only authorized the issuance of 3,000,000 shares of Series A Preferred Stock.

. . .

## Discussion of Prior Acts of Board of Officers

## Amended and Restated Articles of Incorporation

Edward Priest then turned the discussion to the prior acts of Brian Priest when Dr. Priest was an officer of the Corporation, in particular the opening of a bank account and the signing of the Corporation's Amended and Restated Articles of Incorporation. Edward noted that he did not sign documents for either action, and that his signature was in fact forged by Dr. Priest.

Dr. Priest stated that this action was necessary because at the time of the Corporation desperately need funding, and at that time Edward Priest was difficult to reach and not responsive. Mr. Priest did not agree with that assessment.
. . .

The discussion then focused on the bank account opened by Dr. Priest at Univest, and the lack of access to records related to the bank account. The board discussed the fact that an account like this does not pass the "smell test" and that all records related to this account should be produced and provided to the Corporation. Dr. Priest noted that the account was closed, and committed to providing the Corporation with all of the records he had related to this account.

. . .

## Discussion of Corporation Loans

. . .

## Univest Loan

The Corporation has a $1,000,000 loan from Univest, which was in the technical default. The Corporation is the borrower, and has pledged all of its assets as security. Brian and Edward Priest are both guarantors of this loan. As additional collateral, Brian Priest and Marianne Priest have granted Univest a security interest in their home in Pennsylvania.

> **Mr. Thompson and Brian Priest discussed communications with Univest. They described Univest as impatient, and noted that the loan is on their Loan Committee watch list as a deteriorating loan.**
>
> . . .
>
> **Brian Priest Personal Loan**
>
> **Brian noted that he also loaned the company personally $35,000 that is currently undocumented**.

A true and correct copy of the April 18, 2010 Minutes of Meeting of Board of Directors of Black Diamond Video, Inc. is attached hereto and incorporated herein as Exhibit "G".

25.     The fact that Black Diamond and its Directors were keenly aware of the aforesaid material corporate irregularities, loan default(s) and director and corporate malfeasance as early as 2009, well before Heridia's January 2010 and April 2010 stock purchases is further confirmed in the September 2010 Complaint for Removal of Directors, and Permanent Injunction filed by Defendant Edward Priest against Defendant Brian Priest, Henry Thompson and Defendant Black Diamond in the Superior Court for the State of California, Alameda County, case number RG-10536657 (the "Priest v. Priest Litigation"), wherein Edward Priest averred:

> **In the first part of 2009, the bookkeeping records and responsibility were transferred from Brian Priest and his personal accountant to BDV corporate offices. Questions arose concerning the missing money and improperly discounted stock sales. In the spring of 2010 Ed Priest started asking questions....**

A true and correct copy of the September 2010 Complaint for Removal of Directors, and Permanent Injunction filed by Edward Priest against Brian Priest, Henry Thompson and Black Diamond in the Superior Court for the State of California, Alameda County is attached hereto and incorporated herein as Exhibit "H".

11

26.     No mention whatsoever of the material "questions", "corporate irregularities",
"corporate malfeasance", and that Black Diamond was in default of its loans, as outlined and
described in the emails, meeting minutes and the Priest v. Priest Litigation Complaint were
disclosed to Heridia prior to his 2010 investments and purchase of Black Diamond securities.

27.     To the contrary, Heridia's 2010 purchases of Black Diamond securities were
procured by false and misleading statements and material omissions.

28.     Unaware of any of the material issues outlined above, throughout the summer and
fall of 2010, Heridia was repeatedly requesting that Black Diamond issue his share certificates
for the Two Hundred Fifty Thousand (250,000) Series A Preferred shares he purchased in April
of 2010, and was repeatedly assured by Black Diamond's Directors and Officers that they were
forthcoming.

29.     It was not until December of 2010 that Heridia first became aware the foregoing
corporate irregularities and malfeasance, when he was advised by Defendant Joseph Papa, for the
first time, that his share certificates for the Two Hundred Fifty Thousand (250,000) Series A
Preferred shares he purchased in April of 2010 could not be issued until the Priest v. Priest
Litigation was resolved.

30.     Until that time, Heridia was completely unaware of the Priest v. Priest Litigation,
the allegations of violations of state and federal securities laws, loan defaults, corporate
irregularities, corporate malfeasance, excessive stock offerings, diversion of corporate assets, and
allegations of Director fraud and forgery and damage resulting therefrom.

31.     Upon learning of the foregoing, counsel to Heridia, immediately, on December
21, 2010, wrote to Black Diamond, and its counsel, demanding rescission of Heridia's April

12

2010 purchases. Specifically Heridia's counsel wrote, in relevant part:

> **.. In addition to prior investments, Mr. Heridia made two separate payments for $150,000 and $100,000 respectively in April 2010, which were for the purchase of preferred stock in BVD. To date, Mr. Heridia has not received any stock certificates for this transaction. In addition, Mr. Heridia has become aware of certain corporate irregularities, none of which were disclosed to him before this investment. These include, among other things, allegations of forgery, improper use of corporate funds for personal use, and failure to deposit proceeds from share purchases into accounts controlled by BDV. It appears, therefore, that Mr. Heridia's purchase of securities was procured by false or misleading statements and/or material omissions in violation of federal and state securities laws and California common law, and that the principals of BDV have engaged in serious breaches of fiduciary duties owed to him and other BDV shareholders.**

> **Mr. Heridia is understandably concerned that his $250,000 investment in BDV has, in fact, ben misdirected from the corporation into the hands of one or more of its principals for their personal use. As a result, he hereby demands that his $250,000 be returned to him promptly, with interest and that any purported share purchases associated with those funds be rescinded immediately.**

A true and correct copy of Meredith Landy, Esquire's December 21, 2010 demand letter for rescission is attached hereto and incorporated herein as Exhibit "I".

32.    Black Diamond did not provide a formal written response to Heridia's December 21, 2010 rescission demand. Rather, Defendants Edward Priest and Joseph Papa, repeatedly assured Heridia that his shares certificates for the April 2010 Two Hundred Fifty Thousand (250,000) Series A Preferred shares would be issued by Black Diamond. They further informally explained that the issuance of valid, legally operative stock certificates would not be possible until settlement of the Priest v. Priest Litigation, as that case would determine the stock composition and charter of Black Diamond.

33.    Based on said representations, Heridia waited patiently for the resolution of the Priest v. Priest Litigation and for issuance of his stock certificates for the Two Hundred Fifty

13

Thousand (250,000) Series A Preferred shares purchased in April of 2010.

34.     In or around May, 2012 Heridia and his then counsel, Jessica L. Hubley, Esquire,
through communication with Black Diamond's counsel, learned that a settlement of the Priest v.
Priest Litigation was imminent.

35.     In an effort to protect Heridia's interest in Black Diamond, on May 4, 2012,
Jessica Hubley, Esquire, on Heridia's behalf, made a formal written demand on the Board of
Directors of Black Diamond for the issuance of the share certificates relating to the April 2010
250,000 shares of Series A Preferred stock (or an alternative form of secured debt) as well as for
an annual meeting of shareholders and an inspection of the Black Diamond books and records.  A
true and correct copy of Jessica Hubley, Esquire's May 4, 2012 demand letter is attached hereto
and incorporated herein as Exhibit "J".

36.     In response, on May 14, 2012, Black Diamond executives forwarded a proposed
Settlement Agreement and General Release to Heridia.  A true and correct copy of the proposed
settlement agreement and general release is attached hereto as Exhibit "E".  The Proposed
Settlement Agreement and General Release outlines each of the share certificates that were
issued to Heridia and further states, in relevant part as follows:

...

**Mr. Heridia states that he paid $250,000 for Additional Series A Preferred Stock at
one dollar ($1.00) per share for which no certificate has been issued, although Black
Diamond states that the price per share should have been one dollar and fifty cents
($1.50).**

**Purpose of the Agreement.  It is possible that one or more directors or officers
pocketed cash payments for Black Diamond stock and/or sold stock at less than the
authorized price.  The parties wish to settle the Issues without resorting to litigation.**

14

> **Settlement. In return for this Release, set out below, Black Diamond a) hereby agrees that Heridia is the owner of the shares represented by the Issued certificates and b) in addition will issue another certificate to Heridia for an additional two hundred fifty thousand (250,000) shares of Series A Preferred stock. Heridia hereby acknowledges that the Series A Preferred Stock does not have the right to vote for the board of directors. ...**

See Exhibit "E", attached hereto.

37.     Heridia refused to execute the proposed settlement agreement and general release, in part because the voting restriction included therein was never agreed to by him.

38.     Realizing that his outstanding issues with Black Diamond would not be settled without litigation, Heridia filed a Motion to Intervene in the Priest v. Priest Litigation, which was denied by the Court on August 15, 2012.

39.     Shortly thereafter, on August 24, 2012, Heridia's counsel, Jessica Hubley, Esquire received a response from Black Diamond to her formal demand for issuance of Heridia's stock certificates. In said August 24, 2012 response, Black Diamond confirms that Heridia owns certain issued and unissued Series a Preferred stock in Black Diamond, but asserted for the first time a demand for an additional payment within ten (10) days by Heridia of Thirty Five Thousand Dollars ($35,000), which Black Diamond asserted represents the difference of fifty cents ($0.50) per share for the Seventy Thousand (70,000) Series A preferred shares purchased by Heridia on January 10, 2010 and for which he was already issued stock certificate P-90. Black Diamond's August 24, 2012 letter further stated that Heridia only owns One Hundred Sixty Six Thousand Six Hundred and Sixty Six (166,666.67) shares of Series A Preferred shares relating to the Two Hundred Fifty Thousand Dollar ($250,000) purchases and payments made on April 20, 2010 and April 30, 2010, despite the clearly acknowledged fact that for each of these

15

purchases the Series A Preferred shares were offered to Heridia at a discounted price of One

Dollar ($1.00) per share.  A true and correct copy of the Black Diamond August 24, 2012

response is attached hereto and incorporated herein as Exhibit "K".

> 40.    The August 24, 2012 Black Diamond Response further states, in relevant part:

**If within ten (10) days Mr. Heridia has not made payment of the remaining
balance due on his subscribed shares of Series A Preferred Stock, or otherwise
presented proof of payment of the full subscription price [defined earlier as $1.50
per share], Black Diamond Video, Inc. will cancel Mr. Heridia's current
certificate(s) and reissue a new certificate representing either (a) his current
422,501.00 investment (i.e. 281,667.33 shares at $1.50) in Series A Preferred Stock
as shown by the Company's records or (b) the dollar investment in Series A
Preferred Stock at $1.50/share as is evidence by adequate proof of payment that he
provides to the Company if that amount is higher.**

**Within ten (10) days please have Mr. Heridia send a check for $35,000 (balance due)
made payable to 'Black Diamond Video, Inc.' in the enclosed envelope addressed to
Black Diamond Video, Inc.  If Mr. Heridia does not agree to payment of the balance
due please have him use the enclosed envelope to return all of his original Series A
Preferred stock certificates to Black Diamond Video, Inc., the Company will then
send Mr. Heridia new certificates for the correct number of shares based on the
current investment.**

See Exhibit "K".

> 41.    In response, on or about September 10, 2012, Sharon Gilbert Trimm, Esquire,

counsel to a group of Black Diamond Shareholders who received similar letters, including

Heridia, advised Black Diamond that these shareholders did not agree with Black Diamond's

assertion of stock ownership or its demand for payment of said "deficiency" and advised that if

any action were taken with respect to their share certificates legal action would be taken.  More

specifically, Heridia's counsel's response states, in relevant part:

**While true that certain shareholders initially purchased preferred shares at $1.50
per share but later purchased preferred shares for less than $1.50 per share, the
shares were offered to these investors at a discounted price as an inducement to buy**

**given the fact your client, BDV, was in severe financial distress and needed immediate capital to continue operations (e.g., payroll and/or pay outstanding obligations).**

**These purchase agreements and the subsequent issuance of certificates were executed by Joe Papa and Ed Priest approximately three years ago. Mr. Brad Gertish, Esquire, of DLA Piper, then BDV's Corporate Counsel was also aware of these transactions. After review from Mr. Gertish, these transactions were approved by BDV's board of directors. The details of these transactions were made part of the dispute in the Priest v. Priest litigation, and significant evidence has been developed and produced in this regard.**

**It is disingenuous to now assert within days of a significant proxy vote that these investors must now pay the difference. Further, such current actions by your client may be violative of their fiduciary duties to their shareholders and subject them to further action in federal court here in Pennsylvania as the sales were made here, and the investors reside here.**

**The purchase price of a security is a material fact; your client's current actions may also trigger the implications of California Corporation Section Code 25400, et seq. The totality of your client's actions may also demonstrate their impermissible deliberate intent to mislead their investors.**

**Should your client take any further action against any of the investors and their share certificates, we shall proceed accordingly.**

A true and correct copy of the unexecuted September 10, 2012 response to Black Diamond is

attached hereto and incorporated herein as Exhibit "L".

42.     To date, Black Diamond has failed and refused to issue share certificates for the

Two Hundred Fifty Thousand (250,000) Series A Preferred stock that Heridia purchased in two

(2) separate transactions on April 20, 2010 and April 30, 2010, and continues to assert that there

is a payment deficiency with respect to the Seventy Thousand (70,000) Series A Preferred Shares

which Heridia purchased in January of 2010, for which Black Diamond issued share certificate

number P-90.

17

43.     Based on the foregoing facts, Heridia brings the following claims against Defendants.

## CLAIMS FOR RELIEF

### COUNT ONE
### Securities Law Violations –Black Diamond

44.     Plaintiff incorporates the foregoing paragraphs, as if set forth fully herein.

45.     Black Diamond and its Directors made certain representations and warranties regarding its financial condition, the price for shares sold, and the existence of material company events.

46.     As set forth more fully above, At the time of the Heridia's January 2010, April 20, 2010 and April 30, 2010 stock purchases, Black Diamond, as set forth above, failed to disclose information known by Black Diamond regarding corporate irregularities, issuance of stock in violation of the Company's Amended and Restated Articles of Incorporation, non-compliance with state and federal securities laws, default on corporate loans, director malfeasance, mismanagement and diversion of corporate funds, including, but not limited to, forgery, improper use of corporate funds for personal use, and failure to deposit proceeds from shares purchases into accounts controlled by Black Diamond.  See Exhibits "F", "G" and "H".

47.     As set forth more fully above, at the time of the Heridia's January 2010, April 20, 2010 and April 30, 2010 stock purchases, Black Diamond offered and Heridia purchased Series A Preferred shares at a rate of One Dollar ($1.00) per share, but in August of 2012 represented that the share price was actually One Dollar and Fifty Cents ($1.50) per share, and sought a

18

deficiency payment from and to reduce the number of Series A Preferred shares owned by Heridia. See Exhibit "K"

48.     The above misrepresentations, omissions, and non-disclosures were made in connection with the purchase and sale of Black Diamond Series A Preferred and Common stock.

49.     Black Diamond and its directors, were each under a duty to disclose the above material information to Heridia.

50.     Black Diamond and its directors, officers, knowingly, intentionally, and/or recklessly failed to disclose and misrepresented the above information to Heridia, with the intent that Heridia would rely upon the representations, as well as the absence of disclosed material information, in making his decision to purchase shares of Black Diamond.

51.     The incomplete information provided to Heridia, as well as the affirmative representations as to the Series A Preferred share price was known to Black Diamond, and was material to Heridia's decision to purchase Black Diamond shares on January 10, 2010, April 20, 2010, and April 30, 2010.

52.     Heridia reasonably relied upon the misrepresentations, omissions, and non-disclosures, described more fully above, of Black Diamond and its Directors to his substantial detriment.

53.     Heridia was injured as a direct and proximate result of his reasonable reliance upon the misrepresentation, omissions and non-disclosures of Black Diamond and its Directors , in that he made the purchases of Three Hundred Twenty Thousand (320,000) shares of Black Diamond Series A Preferred Stock and Forty Five Thousand (45,000) shares of Black Diamond Common Stock on January 10, 2010, April 20, 2010 and April 30, 2010.

19

54.     The above-described misrepresentations, omissions and non-disclosures of Black Diamond constitute violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b), and S.E.C. Rule 10b-5, which is codified at 17 C.F.R. 240.10b-5.

55.     The above-described misrepresentations, omissions and non-disclosures of Black Diamond  constitute violations of the *Cal Corp Code § 25401* for which Black Diamond is civilly liable under *Cal Corp Code § 25501*.

56.     Pursuant to *Cal Corp Code § 25501* and federal securities laws , Heridia is entitled to damages and/or rescission of his January 2010, April 20, 2010, and April 30, 2010 stock purchases.

WHEREFORE, Plaintiff  prays this Honorable Court enter judgment in Plaintiffs favor and award Plaintiff direct, incidental, consequential, and/or treble damages arising from Defendants actions and omissions,  including attorney's fees and costs of suit, and further grants Plaintiff's request for  rescission of the January 10, 2010, April 20, 2010, and April 30, 2010 stock purchases, and such other relief as this Court may find just and equitable, including an award of punitive damages.

## COUNT TWO
### Securities Law Violations – Black Diamond Directors/Officers
### Defendants Edward Priest, Brian Priest, and Joseph Papa

57.     Plaintiff incorporates the foregoing paragraphs, as if set forth fully herein.

58.     By virtue of the Black Diamond board resolutions, officer's certificates, and similar documents, the Black Diamond Directors/Officers, Defendants Edward Priest, Brian Priest, and Joseph papa, individually, jointly, and severally, had made certain specific

20

representations and warranties regarding Black Diamond's financial condition, share prices and the existence of material company events.

59.     At the time of Heridia's January 2010, and April 2010 stock purchases, the Black Diamond Directors/Officers Defendants Edward Priest, Brian Priest and Joseph Papa each, jointly and severally, as set forth above, failed to disclose information known by them regarding corporate irregularities, issuance of stock in violation of the Company's Amended and Restated Articles of Incorporation, non-compliance with state and federal securities laws, default on corporate loans, director malfeasance, mismanagement and diversion of corporate funds, including, but not limited to, forgery, improper use of corporate funds for personal use, and failure to deposit proceeds from shares purchases into accounts controlled by Black Diamond. See Exhibits "F", "G" and "H".

60.     As set forth more fully above, at the time of the Heridia's January 2010, April 20, 2010 and April 30, 2010 stock purchases, Black Diamond offered and Heridia purchased Series A Preferred shares at a rate of One Dollar ($1.00) per share, but in August of 2012 represented that the share price was actually One Dollar and Fifty Cents ($1.50) per share, and sought a deficiency payment from and to reduce the number of Series A Preferred shares owned by Heridia.  See Exhibit "K."

61.     The above misrepresentations, omissions, and non-disclosures by the Black Diamond Directors/Officers Defendants Edward Priest, Brian Priest, and Joseph Papa were made in connection with the purchase and sale of Black Diamond Preferred and Common Stock.

21

62.     The Black Diamond Directors/Officers Defendants Edward Priest, Brian Priest, and Joseph Papa each were under an affirmative duty to disclose the above information to Heridia.

63.     The Black Diamond Directors/Officers Defendants Edward Priest, Brian Priest, and Joseph Papa each, jointly and severally, knowingly, intentionally, and/or recklessly failed to disclose the above information to Heridia, with the intent that Heridia would purchase Black Diamond stock.

64.     The material information which was not disclosed to Heridia, described more fully above, as well as the affirmative representations with respect to the hare price of Series A Preferred Shares, and the number of shares Heridia was to receive as consideration for his payments of Three Hundred Twenty Thousand Dollars ($320,000), was material to Heridia's decision to purchase Black Diamond Preferred and Common stock on January 10, 2010, April 20, 2010, and April 30, 2010.

65.     Heridia reasonably relied upon the misrepresentations, omissions, and non-disclosures of the Black Diamond Directors/Officers Defendants Edward Priest, Brian Priest, and Joseph Papa, to his substantial detriment.

66.     Heridia was injured and has suffered economic loss as a direct and proximate result of his reasonable reliance upon the misrepresentation, omissions and non-disclosures of each of the Black Diamond Directors/Officers Defendants Edward Priest, Brian Priest, and Joseph Papa.

67.     The above-described misrepresentations, omissions and non-disclosures of the Black Diamond Directors/Officers Defendants Edward Priest, Brian Priest, and Joseph Papa

22

constitute violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b), and S.E.C. Rule 10b-5, which is codified at 17 C.F.R. 240.10b-5, for which they are jointly and severally liable with Black Diamond.

68.    The above-described misrepresentations, omissions and non-disclosures of the Black Diamond Directors/Officers Defendants Edward Priest, Brian Priest, and Joseph Papa constitute violations of the above-described misrepresentations, omissions and non-disclosures of Black Diamond  constitute violations of the *Cal Corp Code § 25401* for which the Black Diamond Directors are jointly and severally  liable under *Cal Corp Code § 25501* and *§ 25504.*

WHEREFORE, Plaintiff  prays this Honorable Court enter judgment in Plaintiff's favor and award Plaintiff direct, incidental, consequential and/or treble damages arising from Defendants Edward Priest, Brian Priest and Joseph Papa's actions and omissions,  including attorney's fees and costs of suit, and further grants Plaintiff's request for  rescission of the January 10, 2010, April 20, 2010, and April 30, 2010 stock purchases, and such other relief as this Court may find just and equitable, including an award of punitive damages.

## COUNT THREE
## Breach of Contract – Black Diamond

69.    Plaintiff incorporates the foregoing paragraphs, as if set forth fully herein.

70.    Black Diamond's failure and refusal to issue Heridia share certificates for the Two Hundred Fifty Thousand Series A Preferred Shares purchased on April 10, 2010 and April 30, 2010, constitutes a breach of the Parties' Stock Purchase Agreement.

23

71.     Black Diamond's demand for an additional payment of Thirty Five Thousand Dollars ($35,000) by Heridia regarding the Seventy Thousand (70,000) Series A Preferred Stock purchased on January 10, 2010, constitutes a breach of the Parties' Stock Purchase Agreement.

72.     Black Diamond's assertion in its August 24, 2012 correspondence that Heridia is entitled to only One Hundred Sixty Six Thousand Six Hundred and Sixty Six (166,666.67) shares of Series A Preferred Stock for his Two Hundred Fifty Thousand Dollar ($250,000) payments in April of 2010, when in fact those shares were offered to Heridia at a discounted price of One Dollar ($1.00) per share, constitutes a breach of the Parties Stock Purchase Agreements.

73.     As a direct and proximate result of the foregoing breaches of contract, Heridia has been extensively damaged.

WHEREFORE, Plaintiff prays this Honorable Court enter judgment in Plaintiff's favor and award Plaintiff direct, incidental, and consequential damage arising from Defendants' actions and omissions, including attorney's fees and costs of suit, and further grants Plaintiff's request for rescission of the January 10, 2010, April 20, 2010, and April 30, 2010 stock purchases, and such other relief as this Court may find just and equitable, including an award of punitive damages.

## COUNT FOUR
## Conversion and Trover – Black Diamond

74.     Plaintiff incorporates the foregoing paragraphs, as if set forth fully herein.

75.     Black Diamond's actions in failing and refusing to properly issue Heridia a stock certificate for the Two Hundred Fifty Thousand (250,000) Series A Preferred shares purchased

on April 20, 2010 and April 30, 2010, constitutes an improper exercise of dominion and control over Heridia's property.

76.     Black Diamond's August 24, 2012 demand for payment and return of the share certificate P-90 relating to the Seventy Thousand (70,000) Series A Preferred shares purchased by Heridia on January 10, 2010, constitutes an improper exercise of dominion and control over Heridia's property.

77.     Black Diamond's assertion in its August 24, 2012 correspondence that Heridia is entitled to only One Hundred Sixty Six Thousand Six Hundred and Sixty Six (166,666.67) shares of Series A Preferred Stock for his Two Hundred Fifty Thousand Dollar ($250,000) payments in April of 2010, when in fact those shares were offered to Heridia at a discounted price of One Dollar ($1.00) per share, constitutes an improper exercise of dominion and control over Heridia's property.  See Exhibit "K."

78.     Black Diamond wrongfully exercised dominion and control over the Shares intentionally, willfully, recklessly, wantonly, and/or negligently.

79.     The wrongful exercise by Black Diamond of dominion and control over the Shares constitutes a conversion or trover of the Shares.

80.     Heridia has been damaged as a direct and proximate result of Black Diamond's actions in conversion of the Shares and is entitled to punitive damages.

WHEREFORE, Plaintiff prays this Honorable Court enter judgment in Plaintiff's favor and award Plaintiff direct, incidental, and consequential damage arising from Defendants actions and omissions, including attorney's fees and costs of suit, and further grants Plaintiff's request for rescission of the January 10, 2010, April 20, 2010, and April 30, 2010 stock purchases, and

such other relief as this Court may find just and equitable, including an award of punitive damages.

## COUNT FIVE
### Breach of Fiduciary Duty – Black Diamond Directors/Officers
### Defendants Edward Priest, Brian Priest, and Joseph Papa

81.    Plaintiff incorporates the foregoing paragraphs, as if set forth fully herein.

82.    The Black Diamond Directors/Officers, Defendants Edward Priest, Brian Priest, and Joseph Papa, each, jointly and severally, acting within the course and scope of their duties, owed fiduciary duties of candor, care and loyalty to Heridia, as a result of Heridia's position as a substantial shareholder of Black Diamond.

83.    The Black Diamond Directors/Officers Defendants Edward Priest, Brian Priest, and Joseph Papa, each, acting within the course and scope of their duties, jointly and severally breached their fiduciary duties of candor, care and loyalty to Heridia by knowingly and intentionally causing Black Diamond to fail and refuse to issue Heridia stock certificates for the Two Hundred Fifty Thousand (250,000) Series A Preferred Stock Heridia purchased in April 2010.

84.    The Black Diamond Directors/Officers Defendants Edward Priest, Brian Priest, and Joseph Papa each, acting within the course and scope of their duties, jointly and severally, breached their fiduciary duties of candor, care and loyalty to Heridia by, as described more fully above, mismanaging Black Diamond, acting in reckless disregard of the facts known to them, concealed from Heridia, as an investor and shareholder, the true nature and extent of the problems that Black Diamond was suffering.

26

85.   Heridia has been substantially injured as a direct and proximate result of these various breaches of fiduciary duty by the Black Diamond Directors/Officers Defendants Edward Priest, Brian Priest, and Joseph Papa.

WHEREFORE, Plaintiff  prays this Honorable Court enter judgment in Plaintiffs favor and award Plaintiff direct, incidental, and consequential damage arising from Defendants actions and omissions,  including attorney's fees and costs of suit, and further grants Plaintiff's request for  rescission of the January 10, 2010, April 20, 2010, and April 30, 2010 stock purchases, and such other relief as this Court may find just and equitable, including an award of punitive damages.

## COUNT SIX
## Sale of Unqualified Securities - Cal. Common Law and Corp. Code § 25500, *et seq.*

86.   Plaintiff incorporates the foregoing paragraphs, as if set forth fully herein.

87.   Black Diamond has sold shares in Black Diamond to Heridia that constitute "securities" under California law.

88.   Black Diamond's one or more offers to sell securities to Heridia were made in California.

89.   Heridia is informed and believes, and on that basis alleges, that Black Diamond sold securities to Heridia without first having qualified the issue with California Corporations Commission.

90.   Heridia is informed and believes, and on that basis alleges, that Black Diamond's failure to qualify its issuance of securities with the California Corporations Commission is not excused or exempted by any federal or state law, regulation or other authority.

27

91.     As a result of Black Diamond's failure to qualify its issuance of securities in California, such sales to Heridia are voidable at Heridia's option.

WHEREFORE, Plaintiff prays this Honorable Court enter judgment in Plaintiffs favor and award Plaintiff direct, incidental, consequential and/or treble damage arising from Defendants actions and omissions, including attorney's fees and costs of suit, and further grants Plaintiff's request for rescission of the January 10, 2010, April 20, 2010, and April 30, 2010 stock purchases, and such other relief as this Court may find just and equitable, including an award of punitive damages.

**COUNT SEVEN**
**Unfair Business Practices - Bus & Prof. Code, section 17200**

92.     Plaintiff incorporates the foregoing paragraphs, as if set forth fully herein.

93.     The following actions of Defendants, described in full above, constitute illegal, fraudulent, and/or unfair practices in violation of the laws of the State of California:

(a)     Attempting to conceal the extent of Heridia's ownership in Black Diamond and/or attempting to mislead Heridia as to the extent of his ownership interest in Black Diamond;

(b)     Attempting to re-price shares issued to Heridia after certificates representing those shares were delivered;

(c)     Refusing to issue additional shares purchased by Heridia;

(d)     Delivering false affidavits, executed by corporate officers and corporate counsel in an attempt to conceal said illegal, fraudulent and unfair business practices; and

(e)     Refusing to hold a meeting of Black Diamond's shareholders.

28

94. Heridia was financially harmed as a result of Defendants' illegal, fraudulent, and/or unfair business practices in an amount that remains uncertain. The harm suffered by Heridia is also prospective, insofar as Defendants' fraudulent, unfair and wrongful actions have and will continue to prevent Heridia from taking steps to attempt to reconfigure the Board of Directors of Black Diamond in an attempt to stop the current mismanagement of Black Diamond, which mismanagement threatens, dilutes and reduces the value of Heridia's investment in Black Diamond.

WHEREFORE, Plaintiff prays this Honorable Court enter judgment in Plaintiffs favor and award Plaintiff direct, incidental, consequential, and/o treble damages arising from Defendants' actions and omissions, including attorney's fees and costs of suit, and further grants Plaintiff's request for rescission of the January 10, 2010, April 20, 2010, and April 30, 2010 stock purchases, and such other relief as this Court may find just and equitable, including an award of punitive damages.

## JURY DEMAND

A jury trial is hereby demanded.

Respectfully submitted
ALAN L. FRANK LAW ASSOCIATES, P.C.

By: _____

ALAN L. FRANK, ESQUIRE
135 OLD YORK ROAD
JENKINTOWN, PA 19046
Ph (215) 935-1000
Fax (215) 935-1110
email afrank@alflaw.net

Attorneys for Plaintiff Michael Heridia

29